UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION
_____

UNITED STEEL, PAPER AND
FORESTRY, RUBBER,
MANUFACTURING, ENERGY,
ALLIED INDUSTRIAL AND
SERVICE WORKERS INT'L
UNION, AFL-CIO-CLC, and
USW LOCAL 323,

      Plaintiffs,

Case No. 1:07-CV-146

v.

Hon. Richard Alan Enslen

DIXIE CONSUMER PRODUCTS,
LLC,

**OPINION**

      Defendant.
_____/

This matter is before the Court on cross-motions for summary judgment. This Court has received ample briefing from the parties, making oral argument unnecessary. *See* W.D. Mich. L. Civ. R. 7.2(d).

**BACKGROUND**

Plaintiffs are the United Steel, Paper and Forestry, Rubber, Manufacturing, Energy, Allied Industrial and Service Workers International Union, and USW Local 323. Defendant is Dixie Consumer Products, LLC. The predecessors to these parties–Georgia Pacific Corporation and Pace Local Union No. 6-0323--negotiated an Agreement for pay and employee benefits with effective dates of April 1, 2001 to March 21, 2007. (Agreement 40.) The Agreement generally provides that pay and benefits will not be changed or terminated during the effective dates except in accordance with contractual procedures for doing so. (Agreement 41-42.) The Agreement insured that union employees would receive, among other benefits, a sickness and accident benefit described as:

    *Waiting period for illness will be 8th day.
    *Waiting period for accident will be 1st day.
    *Amount shall be 50% of 40 hours pay at permanent rate.
    *Coverage shall be 26 weeks.
    *Time frame for successive periods of disability shall be 90 days.

(Agreement, Schedule B, 45.)

Union members Rick Partanen and Richard/John Simmons initially received "S&A" benefits from third-party provider and administrator MetLife, before the administrator denied further benefits.[1] (Compl. ¶¶ 9-13; Carol Wood Decl. ¶ 3)  The Union filed a grievance against Defendant on the members' behalf, but Defendant refused to arbitrate the grievance. (Compl. ¶¶ 15-16.) The Agreement obligates the parties to arbitrate ". . .an issue . . . regarding the interpretation or application of this Agreement . . . ." (Agreement 20.) The final step in the grievance process is the submission of the dispute to a neutral arbitrator. (Agreement 22-23.)  The arbitration decision is deemed "final and binding" as to the dispute. (*Id.*)

Defendant's refusal to arbitrate relates to the provisions of the S&A Plan for challenges to ERISA (Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001 *et seq.*) eligibility determinations. Defendant's contemporary correspondence insisted that the union members utilize the ERISA administrative process contained in the MetLife Plan. (Pls.' Br. in Supp. of Summ. J., Ex. 5.)  Both the operative plan language and the Metropolitan Summary Plan Description effective January 1, 2002 (the time which the S&A benefits promised by the Agreement were to commence),

---

[1] The Complaint names the second union member as "Richard Simmons," but he is named as "John Simmons" in Carol Wood's Declaration.

required submission of eligibility disputes and appeals to the ERISA Plan Administrator.[2] (Def.'s Br. in Supp. of Summ. J., Ex. 3A at 5-6, 9; Ex. 2 at 70-71; Rosalind Marshall Decl. ¶¶ 3-5.)

### **SUMMARY JUDGMENT STANDARDS**

Both motions seek relief under Federal Rule of Civil Procedure 56. Under Rule 56(c), summary judgment is proper if the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. The initial burden is on the movant to specify the basis upon which summary judgment should be granted and to identify portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The burden then shifts to the non-movant to come forward with specific facts, supported by the evidence in the record, upon which a reasonable jury could find there to be a genuine fact issue for trial. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

In assessing evidence, credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences are jury functions. *Adams v. Metiva*, 31 F.3d 375, 382 (6th Cir. 1994). The evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in the non-movant's favor. *Celotex Corp.*, 477 U.S. at 323 (quoting *Anderson*, 477 U.S. at 255). The factual record presented must be interpreted in a light most favorable to the non-movant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). Notwithstanding, cases which present

---

[2]Plaintiffs' Sur-Reply takes issue with the fact that the cited plan language was not the "1996" Plan which was referenced in Schedule B of the Agreement. These comments misunderstand the point of the 1996 reference in Schedule B–which was to guarantee benefit levels described in Schedule B immediately below the 1996 reference. The 1996 Plan was superceded on January 1, 2002 by new benefit provisions, as mentioned in Schedule B. (Agreement 45.). The Schedule does not mention features of the 1996 Plan other than the benefit levels–which were continued in the benefits described in the 2002 summary plan description. There is also no evidence in this record to support any inference that any other feature of the 1996 Plan was required by the Agreement.

predominantly legal issues–such as contract interpretation–are particularly amenable to summary adjudication. *Sheet Metal Workers, Int'l Ass'n, Local Union No. 24 v. Architectural Metal Works, Inc.*, 259 F.3d 418, 426 (6th Cir. 2001).

## **LEGAL ANALYSIS**

This legal dispute dances around a single question: whether the labor agreement creates a right for employees to grieve individual S&A benefit eligibility determinations. Part of the legal backdrop for this dance are the United States Supreme Court's determinations in *AT&T Techs., Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643 (1986). The *AT&T* decision laid out several propositions which are germane. It held that it is the duty of the Court, not the arbitrator, to interpret the agreement and determine the scope of the parties' agreement to arbitrate. *Id.* at 649, 651. It also recognized from the Court's earlier case law a presumption favoring arbitration of labor disputes:

> [W]here the contract contains an arbitration clause, there is a presumption of arbitrability in the sense that "[a]n order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage." *[Steelworkers v.] Warrior & Gulf [Navigation Co.],* 363 U.S. [574], 582-583 [(1960)]. . . . Such a presumption is particularly applicable where the clause is as broad as the one employed in this case, which provides for arbitration of "any differences arising with respect to the interpretation of this contract or the performance of any obligation hereunder...." In such cases, "[i]n the absence of any express provision excluding a particular grievance from arbitration, we think only the most forceful evidence of a purpose to exclude the claim from arbitration can prevail." *Warrior & Gulf, supra,* 363 U.S., at 584-85.

*Id.*, 475 U.S. at 650. It likewise recognized, notwithstanding the presumption, "'arbitration is a matter of contract and a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Id.* at 648 (quoting *Warrior & Gulf,* 363 U.S. at 582).

Plaintiffs argue, based on such principles, and the facts that the Agreement contained a broad arbitration clause and did not make any explicit exception for ERISA benefit determinations, those benefit determinations are subject to the presumption favoring arbitration. This is an able argument

except that it overlooks the context of ERISA benefit determinations and the case law which has grown up around them.

ERISA does not contain an express statutory administrative exhaustion requirement. *Miller v. Metro. Life Ins. Co.,* 925 F.2d 979, 986 (6th Cir. 1991) (citing *Makar v. Health Care Corp. of Mid-Atlantic,* 872 F.2d 80, 83 (4th Cir. 1989)). Nevertheless, ERISA does mandate that benefit plans include internal dispute resolution procedures. *Baxter v. C.A. Muer Corp.*, 941 F.2d 451, 453-54 (6th Cir. 1991). The Sixth Circuit in *Baxter* has said that these administrative procedures should be regularly utilized by the parties as a pre-condition to suit. *Id.* This holding is consistent with the holdings of other Circuits who have reached the same conclusion. *See Pethers v. Unum Life Ins. Co. of Am.*, 2005 WL 2206478, *2 (W.D. Mich. Sept. 12, 2005) (citing cases).

Although the above cases did not consider a union contract, the rule of ERISA exhaustion, followed in this Circuit since 1991, has been made applicable to union-contracted benefits. In *United Steelworkers of Am. v. Commonwealth Aluminum Corp.,* the Sixth Circuit held:

> We find that the incorporation of the claims review procedure, which expressly provides that the decisions of the Plan Administrator will be final and binding on all interested parties, expresses an intention to exclude from arbitration all benefit disputes which are within the Administrator's authority. Further, we find the grievances allege denial of group insurance benefits under the PCN Plan. As such, they come within the Administrator's broad authority to interpret the terms of the Plan, make eligibility determinations, decide disputes concerning a participant's rights, and decide questions of both fact and Plan interpretation.

*United Steelworkers of Am., AFL-CIO-CLC v. Commonwealth Aluminum Corp.*, 162 F.3d 447, 451-52 (6th Cir. 1998). This decision was framed in terms of the contract language, though precedent goes beyond the contract language and also considers the plan language. One case cited with approval in *Commonwealth Aluminum* is the Fifth Circuit's decision in *Local Union No. 4-449, Oil, Chemical & Atomic Workers Union, AFL-CIO v. Amoco Chem. Corp.*, 589 F.2d 162, 164 (5th Cir. 1979). The

*Amoco Chem.* case drew the inference that individual benefit determinations were excluded from the grievance process because the contemporaneous plan language gave the plan administrator final authority to interpret and apply the terms of the benefit plan. *Id. See also PDG Chem. Inc. v. Oil, Chem. & Atomic Workers Union,* 164 F. Supp. 2d 856, 861 (E.D. Tex. 2001) (same).

  The same inferences readily apply here. In this case, the contemporaneous plan language gave the plan administrator the power and discretionary authority to "interpret and construe, in its sole discretion, the Plan and to decide all questions of eligibility of any person to participate in the Plan or to receive benefits under it, and its interpretations therefore shall be final and conclusive." (Georgia-Pacific Corp. Lifechoices Benefits Program, January 1, 2001, at 9.) The Plan further provided for administrative exhaustion of benefit appeals and stated that administrative exhaustion "must be exhausted before any legal action is filed by a Covered Person." (*Id.* at 6.) This contemporaneous language was consistent with the later Summary Plan Description language explicitly covering the S&A Benefits, which provided that MetLife Disability was to process administrative appeals of S&A denials. (Jan. 1, 2002 Summ. Plan Description 70-71.) It is also consistent with the controlling industrial practices in the Sixth Circuit which, especially since the decision in *Baxter*, have recognized that labor contract disputes generally concern questions about the benefit levels promised in labor agreements but do not wade into the claim processing minutiae occupied by the plan fiduciaries.

  An examination of the contrary cases cited by Plaintiffs confirms the above view. The case of *Cleveland Elec. Illuminating Co. v. Utility Workers Union of Am., Local 270*, 440 F.3d 809, 812 (6th Cir. 2006), involved a company that unilaterally modified retiree benefits previously promised in a union contract. *Id.* at 811. This dispute was held to be subject to labor arbitration. *Id.* at 816. The rational for doing so is clear when the labor contract guarantees those benefits as well as the arbitration of such contract disputes–*i.e., section* 301 of the Labor Management Relations Act, 29 U.S.C. § 185

then authorizes use of the grievance process. Furthermore, the ERISA administrative exhaustion process would be useless to address such a dispute because that process only confirms eligibility under a plan as opposed to mandating modification of the plan to confirm to a labor agreement and/or payment of contrary benefits promised in the labor agreement. Also distinguishable is this Court's analysis in *Graphic Packaging Int'l v. United Steel Workers*, 2007 WL 1877700 (W.D. Mich. Jan. 22, 2007), which likewise concerned a breach of a promise to pay set benefit levels as to an employee who was determined eligible for such benefits.[3]

## **CONCLUSION**

For the reasons given here, the Court finds that the particular S&A benefit eligibility determinations were not subject to labor arbitration under the Agreement. Accordingly, summary judgment shall issue in favor of Defendant and against Plaintiffs, dismissing this suit with prejudice.

|  |  |
|---|---|
|  | /s/ Richard Alan Enslen |
| DATED in Kalamazoo, MI: | RICHARD ALAN ENSLEN |
| January 7, 2008 | SENIOR UNITED STATES DISTRICT JUDGE |

---

[3] Plaintiffs also argue in part that Defendant waived any objection to arbitration by not making a prompt objection to arbitration. (Pls.' Br. in Supp., 15.) Notwithstanding such argument, the record simply does not support an inference that Defendant implicitly or explicitly waived its position that labor arbitration under the Agreement was not applicable to ERISA benefit determinations.